UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

KENNETH LYNN MOORE,

        Plaintiff,

  v.

BILL LOCKYER, Attorney General of California; THOMAS J. ORLOFF, District Attorney for the County of Alameda; and JOE SABINY,

        Defendants.
_____/

No. C 04-1952 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motions to Dismiss**

    Plaintiff Kenneth Lynn Moore is state prisoner incarcerated at Salinas Valley State Prison in Soledad, California, where he is currently serving a life sentence without the possibility of parole. On April 15, 2005, plaintiff filed his second amended complaint (hereinafter "complaint") in this action brought pursuant to 42 U.S.C. section 1983. In his complaint, plaintiff seeks the release of potentially exculpatory biological evidence in the possession and control of officers of the State of California for the purpose of testing that evidence for the presence of deoxyribonucleic acid ("DNA") and alleges that the state's failure to release the requested evidence violates his rights under the First, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Now before the court are defendants' motions to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

On March 7, 1980, an Alameda County, California jury found plaintiff Kenneth Moore and his brother, David Moore, guilty of a host of serious crimes arising from ten separate incidents that occurred in Northern California in August 1978. Among the offenses for which both plaintiff and his brother were convicted is the rape of "Linda S." in a San Jose motel room on August 11, 1978. At trial, the victim's husband, "Dennis S.," and her seven-year-old son, both of whom were present in the room at the time of the rape, identified plaintiff as one of the perpetrators of the crime. In addition, the prosecution presented tapes of jailhouse conversations between plaintiff and his brother that appeared to inculpate plaintiff in a number of the crimes with which he had been charged and evidence that the manner in which Linda S.'s rape was perpetrated was consistent with plaintiff's *modus operandi*.

While plaintiff now admits to having committed one of the offenses for which he was tried and convicted, the theft of a pickup truck from a Los Altos, California auto dealership, he maintains that he is innocent of the remaining offenses, including the rape of Linda S. Specifically, plaintiff argues that his conviction on the remaining counts of the indictment is attributable to a case of mistaken identity and points to his brother and other unidentified individuals as the true perpetrators of the more serious crimes of which he has been found guilty. In so doing, he calls into question the reliability of the eyewitness testimony presented at his trial, pointing to studies documenting the questionable reliability of eyewitness identification in general and the high frequency of cross-racial misidentification in particular.[2]

Seeking to establish his innocence, plaintiff has repeatedly sought access to several articles of Linda S.'s clothing that investigators had collected from the San Jose motel room and the "rape kit" that was prepared following the assault in hope of testing that evidence for the presence of DNA. According to the complaint, plaintiff's efforts to carry out such testing began in the mid-1990s, when he filed a petition for a writ of habeas corpus in Alameda County Superior Court requesting that DNA tests be performed on the evidence. Second Amended Complaint ¶ 64. That request was rejected by the court, as were several more unsuccessful efforts to obtain DNA testing that plaintiff made in the 1990s.[3] Id. ¶ 65.

In 2000, the California legislature enacted California Penal Code section 1405. Subject to a number of procedural and substantive requirements, section 1405 provides that certain convicted felons can obtain DNA testing of biological evidence for the purpose of establishing their innocence of the crimes of which they have been convicted. Relying on this provision, plaintiff filed a motion in Alameda County Superior Court requesting that the biological evidence collected during the investigation of Linda S.'s rape be tested for the presence of DNA. The court denied that motion on April 11, 2001, and plaintiff's motion for reconsideration of the court's April 2001 order was denied on December 11, 2001.

On September 18, 2002, plaintiff filed another motion for post-conviction DNA testing in Alameda County Superior Court. In considering this motion, the court found that plaintiff had failed to prove that the testing results would raise a reasonable probability that his sentence would have been more favorable if the results of the DNA testing had been available at the time of conviction, as is required to establish eligibility for relief under Penal Code section 1405. SAC ¶ 65; see Cal. Penal Code § 1405(f)(5). Accordingly, in an order dated December 10, 2002, the court again denied plaintiff's request for DNA testing.

On May 18, 2004, plaintiff filed the instant action in this court under 42 U.S.C. section 1983, naming as defendants California Attorney General Bill Lockyer, Alameda County District Attorney Thomas J. Orloff, and Joe Sabiny, an employee of the Santa Clara County District Attorney's Crime Laboratory. The currently operative pleadings allege that Sabiny and the Santa Clara County District Attorney's Office maintain possession of the biological evidence collected during the course of investigating Linda S.'s rape and that by denying plaintiff access to that evidence, defendants have violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Based on these allegations, plaintiff seeks the release of any material biological evidence in defendants' possession in order to permit DNA testing of that evidence.

On June 3, 2005, defendants Lockyer and Sabiny filed separate motions to dismiss plaintiff's complaint, arguing that this court lacks jurisdiction to entertain the instant action. Alternatively, defendants assert that plaintiff has failed to state a claim under section 1983 and thus urge the court

3

to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court considers the issues raised by defendants' motions in the discussion that follows.

LEGAL STANDARD

I.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court. See, e.g., Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039–40 (9th Cir. 2003), cert. denied, 541 U.S. 1009 (2004). The plaintiff bears the burden of establishing the propriety of the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Consequently, a Rule 12(b)(1) motion will be granted if the complaint, when considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. Savage, 343 F.3d at 1039 n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Alternatively, a defendant may seek dismissal under Rule 12(b)(1) by presenting evidence to refute the jurisdictional facts alleged in the complaint. Id. Once the defendant has introduced such evidence, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage, 343 F.3d at 1039 n.3 (citation omitted).

II.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Unless it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief, a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957). When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true all material allegations of the complaint, and all reasonable inferences must be drawn in favor of the non-moving party. See, e.g., Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996) (citations omitted). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or

an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

DISCUSSION

The substantive issue raised in the instant action is whether plaintiff, having been lawfully convicted of a criminal offense and sentenced to imprisonment for life without the possibility of parole, has a federal constitutional right to obtain access to potentially exculpatory biological evidence for the purpose of subjecting that evidence to DNA testing. Before turning to the merits of that constitutional issue, the court must address the threshold question of whether it has jurisdiction to entertain plaintiff's claims in an action brought pursuant to 42 U.S.C. section 1983.

I.      Rooker-Feldman Doctrine

The first jurisdictional question raised by defendants' motions is whether the court must dismiss plaintiff's section 1983 claims as an impermissible appeal of a state court judgment under the rule set forth in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Under the "Rooker-Feldman doctrine," a federal district court is prohibited from assuming what would amount to be an appellate role vis-à-vis its state counterparts. See Feldman, 460 U.S. at 476; Rooker, 263 U.S. at 415–16. Thus, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court." Noel v. Hall, 34 F.3d 1146, 1164 (9th Cir. 2003).

The test for whether a federal action amounts to a de facto appeal of a state court judgment requires the court to determine whether issues presented in the federal and state court actions are "inextricably intertwined." See Feldman, 460 U.S. at 483 n.16; Kougasian v. TMSL, Inc., 359 F.3d 1136, 1142 (9th Cir. 2004). However, under the law of this Circuit, Feldman's "inextricably intertwined" standard is construed narrowly. Kougasian, 359 F.3d at 1142. The Ninth Circuit recently explained the rationale for such an approach in Kougasian:

> [T]he 'inextricably intertwined' test does not mean that a federal plaintiff can never raise issues that are 'inextricably intertwined' with issues already decided in completed state court litigation. If that were so, Rooker-Feldman would in some

> cases give greater preclusive effect to state court judgments than the states themselves would give those judgments. Such super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that federal courts give the same (not more and not less) preclusive effect the rendering state courts would give to those judgments.

Id. at 1142–43 (citations omitted). Accordingly, under Ninth Circuit law, the Rooker-Feldman doctrine will only apply in this Circuit where a plaintiff has "allege[d] legal error by the state court and seek[s] relief from the state court's judgment." Id. at 1142 (citing Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003)).

In light of this controlling precedent, there can be no serious dispute that plaintiff's section 1983 claims fall well outside the scope of Rooker-Feldman's jurisdictional bar. Plaintiff's complaint does not allege that the California courts erred in convicting him for Linda S.'s rape; nor does plaintiff seek review of the state court's application of Penal Code section 1405 to the facts of his case. Rather, plaintiff has asserted a host of constitutional claims that he did not raise (and indeed could not have raised) in the context of the state court section 1405 proceedings. Under such circumstances, the Ninth Circuit has made clear that the effect of those proceedings must be determined by reference to state preclusion law rather than under the Rooker-Feldman doctrine. Accord Kougasian, 359 F.3d at 1143 (concluding, upon finding that the Rooker-Feldman doctrine did not divest the district court of jurisdiction, that state law must determine the preclusive effect of a prior state court judgment). The court addresses the preclusive effect of the state court proceedings infra at Part III.

II.     Habeas Corpus Jurisdiction

Defendants argue as well that this court lacks jurisdiction to entertain plaintiff's claims under 42 U.S.C. section 1983 because they amount to a challenge to the fact or duration of confinement that may only be pursued by way of a habeas corpus relief. In support of their argument, defendants cite Harvey v. Horan, 278 F.3d 370 (4th Cir.), reh'g and reh'g en banc denied as moot, 285 F.3d 298 (4th Cir. 2002), in which the Fourth Circuit held that post-conviction attempts to obtain access to DNA evidence are cognizable only under the federal habeas corpus statute. Plaintiffs disagree, citing Bradley v. Pryor, 305 F.3d 1287 (11th Cir.), reh'g and reh'g en banc denied, 54 Fed. Appx. 693

6

1  (11th Cir. 2002), cert. denied, 538 U.S. 999 (2003), in which the Eleventh Circuit held that post-
2  conviction attempts to obtain access to DNA evidence are cognizable under section 1983.

3       During the time between the filing of the briefs for this motion and oral argument, the Ninth
4  Circuit decided Osborne v. District Attorney's Office, No. 04-35126, 2005 WL 2159052 (9th Cir.
5  Sep. 8, 2005).  In Osborne, the Ninth Circuit held—correctly, in the view of this court—that post-
6  conviction suits to obtain access to potentially exculpatory DNA evidence are cognizable under
7  section 1983.  In light of Osborne, and as defendants conceded at oral argument, there is no longer
8  any dispute that this court has jurisdiction to hear plaintiff's claims under section 1983.[4]
9  Accordingly, the court rejects defendants' argument that plaintiff's claims in the instant action may
10 only be brought by way of a petition for a writ of habeas corpus.

11      The more difficult question left open by the Fourth Circuit, the Eleventh Circuit, and now the
12 Ninth Circuit is whether there is a federal constitutional claim that can be asserted under section
13 1983.  Here, section 1983 and habeas corpus jurisprudence are substantially the same—a claim under
14 either theory will only lie where a "specific constitutional guarantee is violated or the error is of such
15 magnitude that the result denies a fundamentally fair trial" under federal due process guarantees.
16 See, e.g., Fuller v. Roe, 182 F.3d 699, 703 (9th Cir. 1999).  A state statutory violation in and of itself
17 will not satisfy section 1983 or habeas jurisdictional requirements unless it rises to the magnitude of
18 error that denies a fundamentally fair trial and, thus, implicates federal due process rights.
19 Osborne has left this question for another day.  For the reasons set forth below, this court
20 need not reach this issue either.

21

22 III.    Statute of Limitations

23      Defendants further argue that plaintiff's claims are time barred.  As defendants correctly
24 point out, Ninth Circuit law instructs this court to apply the forum state's statute of limitations for
25 personal injury actions and any relevant state tolling provisions that are not inconsistent with federal
26 law in order to determine whether a section 1983 claim has been timely filed.  See Fink v. Shedler,
27 192 F.3d 911 (9th Cir. 1999).  Prior to January 1, 2003, California's statute of limitations for
28 personal injury actions was one year.  Cal. Civ. Proc. Code § 340(3) (current version at Cal. Civ.

1 Proc. Code § 335.1 (2002)). Although the California legislature recently extended the limitations
2 period for such actions to two years, see Cal. Civ. Proc. Code section 335.1, the new two-year
3 limitations period does not apply retroactively. Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir.
4 2004), cert. denied sub nom. Kempton v. Maldonado, 125 S. Ct. 1725 (2005). Thus, the appropriate
5 limitations period for any section 1983 claim that accrued before the new statute's January 1, 2003
6 effective date is one year.

7 That raises the question of when plaintiff's claims accrued, which the court must determine
8 as a matter of federal law. Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2003) (citing Morales v.
9 City of Los Angeles, 214 F.3d 1151, 1153–54 (9th Cir. 2000)). Under Ninth Circuit law, "a claim
10 accrues when the plaintiff knows or has reason to know of the injury which is the basis of the
11 action." Id. (quoting Morales, 214 F.3d at 1154). Applying this standard to the case at bar, it is
12 apparent that plaintiff's claims are well outside the one-year limitations period that applies to pre-
13 2003 personal injury claims in California. The injury that plaintiff seeks to remedy in the instant
14 action is the denial of access to biological evidence for the purpose of conducting DNA testing. As
15 the facts alleged in his complaint make clear, plaintiff has known of his injury since at least the mid-
16 1990s and has filed two state court motions seeking access to the evidence. These undisputed facts
17 establish that plaintiff failed to file this action within California's one-year limitations period for
18 personal injury actions.

19 This conclusion would ordinarily compel the court to grant defendants' motion to dismiss on
20 the ground that plaintiff's section 1983 claims are time-barred. However, under California law, the
21 running of a statute of limitations may be tolled "[w]here the danger of prejudice to defendant is
22 absent, and the interests of justice so require." Azer, 306 F.3d at 936 (citing Stoll v. Runyon, 165
23 F.3d 1238, 1242 (9th Cir. 1999)). California courts apply the doctrine of equitable tolling when
24 three conditions are satisfied: namely, (1) the defendant must have had timely notice of the claim; (2)
25 the defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3)
26 the plaintiff's conduct must have been reasonable and in good faith. Addison v. State, 21 Cal. 3d
27 313, 319 (1978); see also Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir. 1988).[5]
28

Construing the allegations in the complaint in the light most favorable to plaintiff, each of these requirements is met here. Indeed, as Ninth Circuit precedent applying California's equitable tolling doctrine to section 1983 claims make clear, the facts of the case at bar present a compelling argument for tolling the statute of limitations. A review of those cases demonstrates that equitable tolling of a statute of limitations is particularly appropriate for two categories of plaintiffs, the first being those who are incarcerated and thus unable to pursue their claims with the same effectiveness as an individual who does not suffer from the disability of imprisonment, and the second being plaintiffs who have sought redress in another forum and seek to pursue a federal civil rights action only after the claims advanced in that forum have been denied. See Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2003) (applying the equitable tolling doctrine to a section 1983 claim filed by a civil detainee); Azer, 306 F.3d at 936 (discussing the tolling of a statute of limitations during the pendency of a related civil proceeding in state court); Hernandez v. City of El Monte, 138 F.3d 393, 401–02 (9th Cir. 1998) (same); Cervantes v. City of San Diego, 5 F.3d 1273, 1276–77 (9th Cir. 1993) (applying the doctrine to toll the statute during the pendency of state administrative proceedings). Here, both circumstances are present, as plaintiff alleges that he has diligently pursued his claims in various state court post-conviction proceedings and that he has remained in custody since the date that his cause of action accrued. Furthermore, because the questions of notice, prejudice, and reasonable and good faith conduct are essentially factual in nature and depend upon matters outside the pleadings, the applicability of the equitable tolling doctrine "is not generally amenable to resolution on a Rule 12(b)(6) motion." Hernandez, 138 F.3d at 402 (quoting Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995)) (noting that "a complaint cannot be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim"). Accordingly, the court denies defendants' motions to dismiss plaintiff's claims on statute of limitations grounds.

IV.     Issue Preclusion

Although defendants' reliance on the Rooker-Feldman doctrine is misplaced, see Part I, supra, the prior state court proceedings in this case present a further obstacle to reaching the merits of

the constitutional claims. During the section 1405 proceedings, the state court found that plaintiff failed to show that "the requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of the DNA testing had been available at the time of conviction." SAC ¶ 54; see Cal. Civ. Proc. Code § 1405(f)(5). Defendants argue that the legal standard for prevailing under plaintiff's constitutional claims in this lawsuit is indistinguishable from the standard under section 1405, and that California preclusion law bars plaintiff from litigating those constitutional claims in this court. See 28 U.S.C. § 1738 (stating that federal courts must apply the preclusion law of the state court that rendered the earlier judgment).[6]

The California Supreme Court set forth the requirements for issue preclusion in Lucido v. Superior Court, 51 Cal. 3d 335 (1990):

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

Id. at 341. The parties do not dispute that the finding in question—that the requested DNA testing would not raise a "reasonable probability" that the verdict would have been more favorable—satisfies the second through fifth elements of this test. The remaining question is whether the constitutional claims in this case turn on a question that is "identical" to that decided in the state proceedings.

Plaintiff raises a total of seven constitutional claims for relief, asserting that defendants have violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments by refusing to release biological evidence collected at the scene of Linda S.'s rape. These claims, though they are framed in various constitutional provisions, all present the same novel question of constitutional law: whether a lawfully convicted state prisoner has a constitutional right to obtain access to potentially

10

1  exculpatory biological evidence for the purpose of testing that evidence for DNA, and if so, under
2  what circumstances that right will attach.
3        Whether such a right exists is a question of first impression in this Circuit and, in fact, has yet
4  to be addressed directly by any federal court of appeals, although it is true that Judge Luttig's lengthy
5  dictum in Harvey argued that convicted criminal defendants have at least a limited constitutional
6  right to access DNA evidence if doing so may enable them to prove their innocence. See Harvey,
7  285 F.3d at 315 (Luttig, J., concurring in denial of rehearing en banc on mootness grounds).  Judge
8  Luttig identified the source of that right as the Due Process Clause of the Fourteenth Amendment,
9  noting that the denial of access to DNA evidence under those circumstances implicates both a state
10 prisoner's residual substantive liberty interest in being free from custody as well as his or her
11 procedural due process right to have previously produced forensic evidence either tested for DNA by
12 the state or released for testing at the prisoner's own expense.  See id.
13       In Godschalk v. Montgomery County District Attorney's Office, 177 F. Supp. 2d 366 (E.D.
14 Pa. 2001), which appears to be the only federal case to hold that a convicted criminal defendant has a
15 right to post-conviction testing of DNA evidence,[7] the district court took a similar approach.  Relying
16 on Brady v. Maryland, 373 U.S. 83 (1963), the Godschalk court cited the well-established rule that
17 the prosecution's pretrial suppression of evidence favorable to a criminal defendant "violates due
18 process where the evidence is material either to guilt or to punishment irrespective of the good faith
19 or bad faith of the prosecution."  177 F. Supp. 2d at 368 (quoting Brady, 373 U.S. at 87).  The court
20 concluded that this rule was controlling in the context of a section 1983 action involving a post-
21 conviction request for the release of DNA evidence, and thus, applying the definition of "materiality"
22 that the Supreme Court set forth in United States v. Bagley, 473 U.S. 667 (1985), the court held that
23 a state prisoner has a due process right to access biological evidence if there is a "reasonable
24 probability" that the results of any DNA testing that could be performed on that evidence would have
25 affected the outcome of the state court proceedings if those results had been available at the time of
26 the prisoner's conviction.  See 177 F. Supp. 2d at 370.
27       While there may be good reasons to distinguish the scope of a defendant's post-conviction
28 right to access potentially exculpatory evidence from the pretrial right that was at issue in Brady and

11

1   Bagley, Judge Luttig's opinion in Harvey and the opinion of court in Godschalk are undoubtedly
2   correct to the extent that they conclude that the Constitution must impose *some* limitations upon a
3   state's authority to withhold potentially exculpatory evidence from a convicted criminal defendant
4   seeking to prove his or her innocence.  As the Supreme Court has repeatedly observed, the Due
5   Process Clause is "intended to secure the individual from the arbitrary exercise of the powers of
6   government."  See Daniels v. Williams, 474 U.S. 327, 331 (1986) (quoting Hurtado v. California,
7   110 U.S. 516, 527 (1884)).  To permit the state to deny a convicted defendant access to evidence that
8   could prove his or her innocence for no reason whatsoever, under any and all circumstances, would
9   undoubtedly be contrary to this principle.  Accord Harvey, 285 F.3d at 317 (Luttig, J., concurring in
10  denial of rehearing en banc) (arguing that the "principle of elemental fairness" embodied in the Due
11  Process Clause requires the government to produce forensic evidence in its possession if the testing
12  of that evidence "could prove beyond any doubt that the defendant did not commit the crime for
13  which he was convicted").  For that reason, it must be the case that due process will under certain
14  circumstances require a state to provide a lawfully convicted criminal with access to potentially
15  exculpatory biological evidence.
16         On the other hand, neither the above-cited opinions nor Supreme Court precedent suggests
17  that the right to access such potentially exculpatory evidence is unconditional.  Upon being lawfully
18  convicted of a crime and sentenced to imprisonment, a criminal defendant forfeits much, if not all, of
19  his or her substantive liberty interest in freedom from confinement, see Connecticut Bd. of Pardons
20  v. Dumschat, 452 U.S. 458, 464 (1981), and with it many of the procedural protections that attach
21  when the state infringes upon that interest.  Cf. Ohio Adult Parole Author. v. Woodard, 523 U.S.
22  272, 288 (1998) (O'Connor, J., concurring) (noting that "once society has validly convicted an
23  individual of a crime and therefore established its right to punish, the demands of due process are
24  reduced accordingly").  Moreover, the residual due process rights of a convicted criminal defendant
25  must be weighed against the state's interest in preserving the finality of its criminal judgments.  See
26  Teague, 489 U.S. at 309 (characterizing the principle of finality as "essential to the operation of our
27  criminal justice system").  In light of these considerations, Judge Luttig accurately characterized the
28  due process right to obtain access to DNA evidence as "limited" in the sense that it allows for

1  substantive and procedural restrictions on access to that evidence to be imposed in order to protect
2  the substantial state interests that are at stake. See Horan, 285 F.3d at 320–21 (Luttig, J., concurring
3  in denial of rehearing en banc).
4       That being the case, the more difficult question is what the nature of such constitutionally
5  permissible restrictions might be. Fortunately, the court need not answer that question with any
6  degree of precision for purposes of adjudicating the instant motions. It suffices to say that even prior
7  to trial, where a far more robust liberty interest is at stake, a criminal defendant's right to access
8  evidence in the state's possession is conditioned upon the defendant's ability to prove that there is a
9  "reasonable probability" that disclosure of that evidence would affect the outcome of the
10 proceedings. Bagley, 473 U.S. at 682. Given the interest of finality that is at stake in the post-
11 conviction setting and the circumscribed nature of criminal defendant's substantive and procedural
12 due process rights, the court may safely assume that the "reasonable probability" standard set forth in
13 Bagley establishes the outer limits of a state prisoner's right to obtain post-conviction access to DNA
14 evidence.
15      While this assumption is by itself insufficient to define the precise contours of the rights that
16 plaintiff seeks to vindicate in the instant action, it is enough to permit the court to conclude that
17 plaintiff cannot prevail on any of the constitutional claims that he has raised in this case. As noted
18 above, the state court expressly found during the section 1405 proceedings that plaintiff failed to
19 show that "the requested DNA testing results would raise a reasonable probability that, in light of all
20 the evidence, the convicted person's verdict or sentence would have been more favorable if the
21 results of the DNA testing had been available at the time of conviction." This is the same standard
22 that the Supreme Court set forth in Bagley for determining whether a criminal defendant has a right
23 to obtain pretrial access to potentially exculpatory evidence in the prosecution's possession, and thus,
24 for the reasons stated above, the lawful application of that standard necessarily comports with the
25 more limited due process requirements in the post-conviction setting.
26      Although the state court did not (and could not) consider the constitutional claims presented
27 in this action, it has already decided the very same issue that is dispositive of those constitutional
28 claims. Under California issue preclusion law, which this court is bound to follow, the court is

13

1 barred from adjudicating that issue a second time. The court therefore grants defendants' motion to
2 dismiss under Rule 12(b)(6).

V. Other Grounds for Dismissal

Defendants further argue that plaintiff has not stated a cognizable constitutional claim. As the court has already dismissed plaintiff's claims under principles of issue preclusion, it will not reach defendants' additional argument.

IV. Leave to Amend

The sole remaining issue is whether leave to amend plaintiff's complaint should be granted. Although it is true that leave to amend a party's pleadings pursuant to Federal Rule of Civil Procedure 15(a) should be liberally granted, a district court need not permit a plaintiff to amend his or her complaint if it determines that the defects in the pleadings "could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (citation omitted). Here, plaintiff has failed to identify a cognizable legal theory that would permit him to obtain the relief that his complaint requests. Thus, because granting leave to amend would be futile, the court finds it appropriate to dismiss plaintiff's claims with prejudice.

CONCLUSION

For the reasons stated above, the court DENIES defendants' motion to dismiss for lack of subject matter jurisdiction and GRANTS defendants' motion to dismiss for failure to state a claim. This action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: September 23, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# ENDNOTES

1. Unless otherwise noted, the facts set forth below are drawn from the allegations in plaintiff's second amended complaint.

2. Whereas plaintiff is African American, all of the crime victims who testified against him at trial were members of other races.

3. Plaintiff now alleges in his brief in opposition that he did not seek to obtain DNA testing in federal court starting in the mid-90s, but rather that he "first requested DNA testing pursuant to § 1405 within months of the passage of the statute that provide [sic] him with that opportunity." Pl.'s Brief in Opposition at 12 n.4. For purposes of deciding this motion, the court will rely on the facts as stated in plaintiff's second amended complaint. See Car Carriers v. Ford Motor Co., 745 F.2d 1101, 1107 (9th Cir. 1984).

4. It is true that certain of plaintiff's constitutional claims require proof, at a minimum, that there is a "reasonable probability" that had the DNA evidence been disclosed the result at trial would have been different. See Wood v. Bartholomew, 516 U.S. 1, 5 (1995). It is also arguably true that plaintiff, who has already been convicted and sentenced, faces an even higher burden in order to prevail on the merits. See Part III, infra. This court recognizes the tension between the jurisdictional limitation—which prohibits section 1983 actions that necessarily undermine the validity of a conviction—and the substantive burden plaintiff faces to prove that there is at least a "reasonable probability" that the DNA evidence would have prevented conviction. It may be that few prisoners will successfully navigate these narrow legal straits.

5. It should be emphasized that the equitable tolling doctrine is distinct from the statutory tolling provisions of California Civil Procedure Code section 352.1, which tolls a statute of limitations for up to two years where a plaintiff is imprisoned on criminal charges for a term of less than life. Cal. Civ. Pro. Code § 352.1 As plaintiff is serving a life sentence, he is outside the scope of the tolling provision set forth in section 352.1. Nevertheless, as the Ninth Circuit observed in Jones v. Blanas, 393 F.3d 918 (9th Cir. 2003), "equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental fairness." 393 F.3d at 928 (internal quotation marks omitted) (quoting Lantzy v. Centex Homes, 31 Cal. 4th 363, 370 (2003)). Consequently, the court held that a plaintiff who was in custody as a civil detainee could avail himself of the equitable tolling doctrine regardless of the fact that civil detention falls outside the scope of section 352.1. See id. at 928–29. The reasoning of the Jones court applies with equal force here. Thus, despite the fact that the statutory tolling provision set forth in Civil Procedure Code section 352.1 does not apply to plaintiff's claims, those claims will not be time-barred if the elements of the equitable tolling doctrine are satisfied.

6. The fact that plaintiff was not able to litigate his constitutional *claims* in their entirety in the state court proceedings is irrelevant to the determination of *issue* preclusion, which depends only on whether the party against whom preclusion is sought previously litigated the same issue in another court. See Lucido v. Superior Court, 51 Cal. 3d 335, 341 (1990)

7. The court is mindful that the district court in the Harvey case also held that the plaintiff, a Virginia state prisoner, had a procedural due process right to access biological evidence for the purpose of conducting DNA testing. See Harvey v. Horan, 119 F. Supp. 2d 581 (E.D. Va. 2000), rev'd, 278 F.3d 370 (4th Cir. 2002), reh'g en banc denied as moot, 285 F.3d 298 (4th Cir. 2002). However, as discussed above, the Fourth Circuit reversed the district court's order granting the plaintiff's motion summary for judgment on jurisdictional grounds. See Harvey, 278 F.3d at 377.